UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| THE UNITED STATES OF AMERICA | 04-CR-201E |
| -vs- | MEMORANDUM and |
| JAMEL SPEARS | ORDER[1] |

---

Defendant Jamel Spears pled guilty to illegal possession of narcotics and a firearm resulting from an encounter with several Buffalo Police Officers ("the Officers") on July 30, 2004. On September 28, 2004, Spears filed a motion to suppress ("Spears's Motion") (1) evidence seized from him by the Officers on July 30 and (2) a statement that he allegedly made after such evidence was seized. The undersigned referred Spears's Motion to Magistrate Judge Leslie G. Foschio pursuant to 28 U.S.C. §636(b)(1)(B) (Supp. 2004) for consideration of the merits and legal issues raised therein. Judge Foschio's Report and Recommendation ("R&R") dated January 14, 2005 recommended that Spears's Motion be denied. On January 28, 2005, Spears filed objections to the R&R. This matter was argued and submitted to this Court on April 1, 2005. For the reasons set forth below, the R&R will be adopted in its entirety and Spears's objections will be overruled.

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" and may adopt those parts thereof to which no *specific* objection is raised, so long as such are not clearly erroneous. 28 U.S.C. §636(b)(1)(C)

---

[1] This decision may be cited in whole or in any part.

(Supp. 2004).[2]  Conversely, the undersigned must make a *de novo* determination with respect to those portions of the R&R to which specific objections have been made.[3]  Spears's objections satisfy Rule 58.2(a)(3) of the Local Rules of Criminal Procedure ("LRCrP"), which requires parties objecting to an R&R to:

> "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."

Because the R&R set forth the facts in detail, this Court will only briefly reiterate such here.  On July 30, 2004, an anonymous caller dialed 911 and reported two 5'7" individuals, one "dark skinned" and one "brown [skinned]", who were carrying guns by the intersection of Sears and Paderewski.  The caller identified the individuals as wearing white T-shirts and black "headwraps", but hung up — purportedly when the individuals approached the caller.  Approximately four minutes after the call, the Officers arrived at the scene and found Spears and an associate near Spears's residence on Sears Street.  The testimony is conflicting with respect to whether Spears and his associate were on Spears's porch or whether they were in front of the house.  In either event, it is undisputed that the Officers arrived to find Spears and his associate about sixty feet away from the intersection of Sears and Paderewski.  The Officers exited their vehicles and directed Spears and his associate to place their hands on the hood of a nearby patrol car.  Neither Spears nor his colleague complied and the Officers directed them to place their hands on their respective heads — a direction that was also ignored.  The Officers

---

[2]*See also Black* v. *Walker*, 2000 WL 461106, at *1 (W.D.N.Y. 2000).

[3]28 U.S.C. §636(b)(1)(C); *United States* v. *Raddatz*, 447 U.S. 667, 675-676 (1980); *Sieteski* v. *Kuhlmann*, 2000 WL 744112, at *1 (W.D.N.Y. 2000).

testified that they observed body-movement indicative of preparation to flee, at which time the Officers "grabbed" Spears and his associate. During the subsequent pat-down frisks, the Officers uncovered firearms and narcotics. After the Officers seized the contraband, Spears allegedly asked "would you be a gentlemen and get rid of that."

Spears objects to the R&R's conclusion that the seizure was constitutional by arguing that Judge Foschio erred in considering circumstances known to the Officers after they exited their vehicles and directed Spears and his associate to place their hands on the hood of a patrol car. In other words, Spears argues that the reasonable suspicion required under *Terry* v. *Ohio*, 391 U.S. 1 (1968), may not be based on events subsequent to the *Terry* stop. Spears further argues that the only information known to the Officers when they directed Spears and his associate to put their hands on the hood was the information conveyed by the anonymous tipster, namely, that two 5'7" black males wearing white T-shirts and black headwraps were carrying guns by the intersection of Sears and Paderewski. Spears's arguments, however, were completely undermined by a decision of the Second Circuit Court of Appeals in *United States of Am.* v. *Swindle*, __ F.3d __, 2005 WL 1110925, at *8-10 (2d Cir. 2005) rendered on May 11, 2005.[4] Under *Swindle*, a suspect is not seized within the meaning of the Fourth Amendment of the United States Constitution until he is physically restrained or where he has submitted to a show of authority. *Ibid.* In other words, there is no seizure where police officers

---

[4] Although the *Swindle* Court was reluctant in holding as it did, it indicated that it was constrained by U.S. Supreme Court precedent, including the decision in *County of Sacramento* v. *Lewis*, 523 U.S. 833, (1998), which construed *California* v. *Hodari D.*, 499 U.S. 621 (1991) as holding that "a police pursuit in attempting to seize a person does not amount to a seizure within the meaning of the Fourth Amendment." *Swindle*, at *3.

yell "Stop, in the name of the law" at a fleeing suspect. *Id.* at *9 (applying *Hodari D.*, supra note 4, at 626). Neither Sears nor his associate followed the Officers' directions. Consequently, they were not seized for purposes of the Fourth Amendment until the Officers grabbed them. Under *Swindle*, the R&R was correct in considering all circumstances preceding the Officers' grabbing of Spears and his associate when determining whether the Officers had reasonable suspicion for a *Terry* stop.[5] Accordingly, this Court will overrule Spears's objections to the extent that he seeks to limit Judge Foschio's reasonable suspicion analysis to events preceding the Officers' arrival.

Furthermore, this Court concurs with the R&R's analysis distinguishing this case from the facts of *Florida* v. *J.L.*, 529 U.S. 266 (2000). Indeed, the Officers in this case had a reasonable suspicion that Spears and his associate were engaged in criminal activity that was afoot based on, *inter alia*, (1) an anonymous tip based on first-hand observational knowledge concerning two individuals brandishing a gun on a public street and (2) the fact that two individuals meeting the physical description provided by the tipster refused two directives from

---

[5]*Swindle*, at *5 ("No matter how unreasonable the order to stop was, the only question for Fourth Amendment purposes was whether reasonable suspicion existed at the moment [the suspect] was tackled. Since [the suspect's] pre-seizure behavior generated reasonable suspicion for a stop, the fact that the unheeded police order lacked such justification was irrelevant as a matter of Fourth Amendment law. *Hodari D.* [*supra* note 4, at 629] thus implicitly authorized a defendant's seizure based on events occurring after issuance of an unreasonable order to stop. We are therefore compelled to conclude that the magistrate and district judges in Swindle's case did not err by considering events that occurred after Swindle was unreasonably ordered to pull over.").

the Officers to place their hands in a safe location.[6]  Accordingly, Spears's objections concerning the applicability of *Florida* v. *J.L.* will be overruled.

Accordingly, it is hereby **ORDERED** that Spears's Objections are overruled, that Spear's Motion is denied and that Judge Foschio's Report and Recommendation dated January 14, 2005 (docket no. 22) is adopted in its entirety.

DATED:	Buffalo, N.Y.

	May 26, 2005

				*/s/ John T. Elfvin*
				JOHN T. ELFVIN
				S.U.S.D.J.

---

[6]*See, e.g., United States* v. *Colon*, 250 F.3d 130, 132-134 (2d Cir. 2001) (finding *J.L.* distinguishable and noting that reasonable suspicion was created by anonymous tipster who, *inter alia*, (1) observed suspect brandishing a gun, (2) called 911 from traceable Sprint cell phone, (3) was recorded by the 911 dispatchers and (4) refused to provide her identity but likely believed that she could be traced); *United States* v. *Harrell*, 268 F.3d 141, 149-151 (2d Cir. 2001) (Meskill, J. concurring) (distinguishing *J.L.* on the grounds that (1) additional indicia of reliability exist where an anonymous call is traced and recorded and where the tipster's information is based on first-hand knowledge and (2) the tip concerned "present activity of 'imminent danger'", which is distinct from the firearms exception rejected in *J.L., infra.*).